**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>WISDOM CAPITAL MANAGEMENT GROUP LTD.,<br><br>        Defendant. | Case No. 24-cv-2501 (JMC) |

**<u>MEMORANDUM OPINION</u>**

The Securities and Exchange Commission initiated this action against Wisdom Capital Management Group Ltd. for making material misrepresentations about its business and failing to respond to the SEC's requests for records, in violation of the Investment Advisers Act of 1940. ECF 1. Despite being served with the SEC's complaint, Wisdom has failed to respond. The SEC has moved for default judgment. ECF 8. The Court **GRANTS** the SEC's motion and enters default judgment against Wisdom.[1]

## I.  BACKGROUND

The Court takes as true the well-pleaded allegations in the SEC's complaint, which Wisdom "is deemed to [have] admit[ted]" upon the clerk's entry of default. *Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014). The SEC regulates investment advisers. ECF 1 ¶ 12; *see also, e.g.*, *Lowe v. SEC*, 472 U.S. 181, 203 (1985). One aspect of its regulatory

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

program is investment adviser registration. Advisers are required to register with the SEC unless they are exempt from doing so. ECF 1 ¶ 12; 15 U.S.C. § 80b-3(a). Among the categories of "Exempt Reporting Advisers" (ERAs), meaning investment advisers that are not required to register, are entities that only advise one or more venture capital funds, or only advise private funds with less than $150 million in assets in the United States. ECF 1 ¶ 13; *see* 15 U.S.C. § 80b-3(l)–(m); 17 C.F.R. §§ 275.203(m)-1(a). Even though ERAs do not have to register with the SEC, they still must comply with certain statutory and regulatory requirements. For example, the records of ERAs are subject to examination by the SEC. ECF 1 ¶ 14; *see also* 15 U.S.C. § 80b-4(a). And they also must complete a portion of the form that investment advisers use to register with the SEC to disclose information about their business practices. ECF 1 ¶¶ 15–16; *see* 17 C.F.R. § 275.204-4(a). That form, called a Form ADV, includes "information about, among other things, an adviser's business, amount of assets under management, ownership, and clients." ECF 1 ¶ 17. Once submitted, Form ADVs are publicly available. *Id.* ¶ 18.

On December 14, 2023, Wisdom filed a Form ADV with the SEC in which it purported to be both an investment advisor and an ERA. ECF 1 ¶¶ 1, 19. Wisdom's Form ADV listed a person named Ricardo Jobity as its Chief Executive Officer and Chief Operating Officer. *Id.* ¶ 20. Wisdom's Form ADV also contained many statements that the SEC later found to be misrepresentations. It listed Wisdom's principal office as an address on Wall Street in New York City. *Id.* ¶ 20. But the true occupant of that location had been at that address for years and had never heard of Wisdom. *Id.* ¶ 25(a). Further, the telephone number that Wisdom provided for its New York office had a San Antonio, Texas area code. *Id.* ¶ 20. Wisdom also reported that it managed $10 million in private funds in the United States. *Id.* ¶ 22. It identified two private funds that it claimed to manage—both of which it said were also named Wisdom Capital Management

Group Ltd.—and provided their "unique" private fund identification numbers. *Id.* ¶ 23. Wisdom claimed that a separate registered investment adviser (RIA) reported information about those funds through the RIA's own Form ADV. *Id.* ¶ 24. But apparently none of that was true. The RIA Wisdom identified has not reported Wisdom's private funds on its own filings, and the SEC has not found any reporting of those funds—or their associated identification numbers—on any other filings. *Id.* ¶ 25(b). Wisdom also identified itself as a public reporting company, which means that it is required to file certain disclosure reports to the SEC on a regular basis. *Id.* ¶ 21. The SEC assigns public reporting companies a Central Index Key number (CIK) that the SEC can use to search for information about these companies on its databases. *Id.* Wisdom included a CIK number on its form. *Id.* However, when the SEC searched for Wisdom by name and CIK number, it could not find any information. *Id.* ¶ 25(c).

The SEC then attempted to review Wisdom's records and other information that it is required to make available to it for inspection under the Investment Advisers Act. ECF 1 ¶ 28. In May and June 2024, SEC attorneys repeatedly attempted to call the telephone number that Wisdom listed on its Form ADV, but no one ever answered. *Id.* ¶ 29. SEC attorneys also emailed Wisdom a letter requesting production of records related to its Form ADV. *Id.* ¶ 30. The SEC sent the request to Jobity's email address that he listed on the Form ADV and used to register with other financial regulatory bodies. *Id.* Those emails went unanswered as well. *Id.*

Because of Wisdom's misrepresentations, and because it failed to respond to the SEC's requests for information, the SEC filed the instant suit, pursuant to its enforcement authority under the Investment Advisers Act, 15 U.S.C. § 80b-9(d) and (e). The complaint alleges that Wisdom's conduct violated Sections 204(a) and 207 of the Act, 15 U.S.C. §§ 80b-4(a), 80b-7. The SEC seeks a judgment permanently enjoining Wisdom from both violating the federal securities laws at issue

3

in its complaint and filing a Form ADV as an ERA. The SEC also asks the Court to order Wisdom to pay a civil monetary penalty of $1,152,316.

The SEC served Wisdom. ECF 5.[2] Wisdom did not respond to the complaint, and following the SEC's request, the Clerk of Court entered default against Wisdom. ECF 6; ECF 7. The SEC then moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). *See* ECF 8. To date, Wisdom has not appeared in this action or asked the Court to set aside the entry of default.

## II.    LEGAL STANDARD

"To warrant a default judgment, the defendant must be considered a totally unresponsive party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of a default, and the motion for a default judgment." *Teamsters Loc. 639-Emps. Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008). Generally, in "the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). But the trial court has the discretion to determine whether a default judgment is appropriate. *See Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Before granting monetary relief, the Court must "make an independent determination of the sum to be awarded unless the amount of damages is certain." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). The Court must also "independently determine whether the plaintiff is entitled to injunctive relief." *U.S. SEC v. Analytica Bio-Energy Corp.,* 317 F. Supp. 3d 574, 578 (D.D.C. 2018).

---

[2] The Court granted the SEC's motion for an order directing alternative service by email. ECF 4.

4

As the Court recognized earlier, a "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. When a defendant does not contest its liability, a court needs only to determine whether the allegations in the complaint are well-pled. *See Fanning v. AMF Mech. Corp.*, 326 F.R.D. 11, 14 (D.D.C. 2018).

## III.   ANALYSIS

At the outset, the Court is satisfied that it "has subject-matter jurisdiction over the action, as well as personal jurisdiction over the Defendant." *Capitol Paving of D.C., Inc. v. H&L Constr. Corp.*, No. 24-cv-2148, 2025 WL 1134960, at *3 (D.D.C. Apr. 17, 2025). The Investment Advisers Act grants district courts jurisdiction over violations of the statute. 15 U.S.C. § 80b-14(a). And for personal jurisdiction, "[w]here a person has 'purposefully directed his activities at . . . residents of the forum,' such as filing statements with the SEC, and the court proceeding results from alleged injuries that 'arise out of or relate to those activities,' the minimum contacts required by the Constitution are satisfied." *U.S. SEC v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 129 n.7 (D.D.C. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). Here, the complaint alleges that Wisdom filed its Form ADV with the SEC in this District. ECF 1 ¶10. Because the jurisdictional prerequisites are satisfied, the Court considers next whether the SEC's "allegations are sufficiently well-pled to establish liability and relief to which" it is entitled. *Landstar Ranger, Inc. v. Flexo Grp., Inc.*, No. 24-cv-2389, 2025 WL 1795025, at *2 (D.D.C. June 30, 2025).

### A. Liability

The Court finds that the complaint's allegations establish Wisdom's liability. The SEC alleges that Wisdom violated Sections 204(a) and 207 of the Investment Advisers Act. Under Section 204(a), an investment adviser's records are "subject at any time, or from time to time, to such reasonable periodic, special, or other examinations by representatives of the Commission as

the Commission deems necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 80b-4(a). This provision empowers the SEC to "require investment advisers to turn over their comprehensive books and records at any time." *Gabelli v. SEC*, 568 U.S. 442, 451 (2013). An investment adviser's failure to allow its records to be subject to examination by the SEC thus violates the statute's provisions. *See, e.g.*, *SEC v. Am. Inst. Couns., Inc.*, No. 75-cv-1965, 1975 WL 440, at *13, *18 (D.D.C. Dec. 30, 1975) (finding investment adviser liable under Section 204 when the adviser had maintained records outside of the United States to avoid review by the U.S. government and "ha[d] not produced for the [SEC] certain essential books and records relating to" the subject of the SEC's inquiry); *SEC v. Neman*, No. 12-cv-03142, 2016 WL 6661174, at *7 (C.D. Cal. July 15, 2016) (granting default judgment for violation of Section 204(a) when the SEC alleged that "as a consequence of failing to maintain . . . records, Defendant did not provide SEC examiners with those records," because the SEC had "sufficiently pleaded that Defendant failed to keep and provide records for SEC examination"); *see also Disraeli v. SEC*, 334 F. App'x 334, 335 (D.C. Cir. 2009) (finding Section 204 liability proper when adviser failed to, among other conduct, "furnish necessary records").

The statute applies to ERAs like Wisdom. *See* 15 U.S.C. § 80b-4(a) (providing that subsection applies to "[e]very investment adviser," except those not required to register pursuant to Section 203(b), which is not the exemption Wisdom claims).[3] The complaint details the SEC's efforts to contact Wisdom and its demand for records about the Form ADV. ECF 1 *Id.* ¶¶ 29–30.

---

[3] In order to be covered by Section 204(a), the "investment adviser" must "make[] use of the mails or of any means or instrumentality of interstate commerce" in connection with its business, 15 U.S.C. § 80b-4, which the SEC's complaint alleges Wisdom does, ECF 1 ¶ 37.

Wisdom ignored the SEC's request and did not make its records available for review. *Id.* Those allegations are sufficient to establish a violation of Section 204(a).[4]

The SEC's complaint also adequately pleads that Wisdom violated Section 207. Section 207 makes it "unlawful for any person willfully to make any untrue statement of a material fact in any registration application or report filed with the" SEC under Sections 203 and 204. 15 U.S.C. § 80b-7 (discussing applications and reports filed pursuant to 15 U.S.C. §§ 80b-3 and 80b-4). Wisdom's Form ADV, which contains information submitted pursuant to Section 203, *see* 17 C.F.R. § 275.204–4(a), provided false information about virtually every aspect of its operations—from where it was located to the investment funds it purported to manage, ECF 1 ¶ 25. And the Court agrees with the SEC's position that Wisdom's misrepresentations were "material"—"a reasonable investor or prospective investor would have considered" information about Wisdom's basic operations and whether it actually managed the private funds it claimed "important in deciding whether or not to invest." *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1305, 1310 (S.D. Fla. 2007) (Form ADV case citing standard from materiality set forth in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) involving the Securities Exchange Act); *Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir.) (stating that the making of a false material statement or omission is "satisfied by essentially the same conduct" under the Securities Act, Securities and Exchange Act, and Section 207 of the Investment Advisers Act), *amended*, 335 F.3d 1096 (9th Cir. 2003); *see also, e.g., SEC v. Cap. Cove Bancorp LLC*, No. 8:15-cv-980, 2016 WL 11752892, at *6 (C.D. Cal. Aug. 31, 2016) (finding Forms ADV that "did not accurately state the amounts

---

[4] Further supporting the SEC's claim that the obligation to present records to the SEC upon request applies to ERAs and that the SEC has adequately pled Section 204(a) liability, is the fact that several district courts have recently entered default judgment against organizations similarly claiming to be ERAs for violating Section 204(a) by "failing to make [their] books and records available to the Commission." Default Judgment, *SEC v. Bluesky Eagle Cap. Mgmt. Ltd.*, No. 25-cv-9507 (S.D.N.Y. Feb. 11, 2026), ECF 25 at 2 (granting default judgment in case where SEC alleged nearly identical facts regarding the SEC's Section 204(a) claim and identical legal theory); Final Judgment by Default, *SEC v. AI Investment Educ. Found. Ltd.*, No. 25-cv-3650 (D. Colo. Apr. 20, 2026), ECF 16 at 2 (same).

of . . . assets under management by tens of millions of dollars" to "constitute false statements of material fact or material omissions" under Section 207). Finally, the complaint alleges that Wisdom's conduct was "willful[]," ECF 1 ¶ 37—an allegation the Court accepts on default and a clear inference from the well-pled allegations given the scope and nature of Wisdom's misrepresentations, *see Robare Grp., Ltd. v. SEC,* 922 F.3d 468, 479 (D.C. Cir. 2019) (assuming without deciding that "willful" for purposes of Section 207 means "intentionally committing the act which constitutes the violation"). Far from simply neglecting to include certain information on its form, Wisdom proffered fake addresses, fund names, and identification numbers in a document it filed with the SEC, and it is implausible to conclude that its conduct in doing so was anything other than intentional.

## B. Relief

Having established Wisdom's default liability, the Court now turns to the question of relief. The SEC seeks a judgment permanently enjoining Wisdom from (1) violating Section 204(a) and (2) violating Section 207, as well as (3) a conduct-based injunction prohibiting Wisdom from filing a Form ADV as an ERA. ECF 8-1 (proposed judgment). It also asks the Court to order Wisdom to pay a civil monetary penalty in the amount of $1,152,316. *Id.* at 6. The Court will order the requested relief and enter the SEC's proposed order as the Court's final judgment.

In considering whether an injunction is appropriate against Wisdom, "the ultimate test is whether [its] past conduct indicates that there is a reasonable likelihood of further violation(s) in the future." *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1168 (D.C. Cir. 1978). "Determining the propensity for future violations requires examining the totality of the circumstances." *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 825 F. Supp. 2d 26, 34 (D.D.C. 2010). Relevant factors include "whether a defendant's violation was isolated or part of a pattern,

8

whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future." *Id.* (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989)).

The Court easily finds that an injunction is appropriate here. The Court recognizes that the complaint speaks to a single Form ADV that Wisdom filed. But Wisdom made many false statements on that form about almost every aspect of its business operations as a supposed investment adviser. The Court has already determined that its misrepresentations were material, substantial, and willful. *One or More Unknown Traders*, 825 F. Supp. 2d at 35 (recognizing that "multiple[] deliberate misrepresentations constituted a pattern warranting an injunction"). The logical inference the Court draws from the complaint's allegations is that Wisdom is not a legitimate company. And because it has ignored the SEC and seemingly attempted to evade it, through the filing of false information about its officers, location, and operations, the Court has no confidence that Wisdom will comply with the SEC's oversight efforts in the future. Nor has it bothered to respond to the lawsuit or provide any assurance that it will not continue its unlawful conduct. *See, e.g.*, *Savoy Indus., Inc.*, 587 F.2d at 1168 (affirming issuance of injunction where defendant's "past conduct" was "highly suggestive of his propensity to commit securities law violations and the likelihood that he will commit such violations in the future," where defendant had "not demonstrated that he underst[ood] his conduct to have been wrongful; and he [did] not give sufficient assurances against future violations"); *see also SEC v. CKB168 Holdings, Ltd.*, No. 13-cv-5584, 2022 WL 3347253, at *4 (E.D.N.Y. Aug. 12, 2022) (finding that "egregious conduct and high degree of scienter, the scope of the fraud," and defendant's "lack of contrition" warranted a conduct-based injunction). The Court is also concerned that "the nature of [its] business activities" as a purported investment advisor "may present [it] with further temptations

to violate the law." *Id.* Considering all the complaint's allegations, the Court finds that so long as Wisdom is permitted to hold itself out as an ERA that manages millions in assets—a representation that the SEC cannot confirm—it is likely that it will violate securities laws in the future.

The Court will also order Wisdom to pay $1,152,316 as a penalty. The Investment Advisers Act authorizes the SEC to seek monetary penalties in civil actions against anyone who has violated the statute. 15 U.S.C. § 80b-9(e). The statute provides three tiers of increasing penalties for each violation. Second-tier penalties are available for violations that involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," 15 U.S.C. § 80b-9(e)(2)(B), which the Court has already found happened here. The amount of the penalty for each violation of the statute cannot exceed a statutorily prescribed amount or the amount of pecuniary gain to the defendant. *Id.* The statute sets the maximum second-tier penalty for an entity like Wisdom at $250,000, *id.*, but this amount has been adjusted upwards on a regular basis by the SEC pursuant to another statute, the Federal Civil Penalties Inflation Adjustment Act of 2015, *see* 17 C.F.R. § 201.1001(b). At the time the SEC filed this case, the maximum statutory second-tier penalty for an entity, adjusted for inflation, was $576,158. SEC, Adjustments to Civil Monetary Penalty Amounts, Release No. 6521 (Jan. 5, 2024), https://www.sec.gov/files/rules/other/2024/33-11263.pdf. That is the amount the SEC seeks here for each of the two violations.

"In determining the amount of the penalty, courts frequently consider such factors as: (1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to demonstrated current and future financial condition." *China Infrastructure Inv. Corp.,* 189 F. Supp. 3d at 136. The Court cannot assess all the relevant factors in this posture—Wisdom has defaulted, so the

10

Court does not have information about its financial condition, for example. But the Court has already recognized the egregious nature of Wisdom's significant misrepresentations and its seeming disregard for federal securities laws and the SEC's oversight authority, all of which create a real risk to prospective investors. The Court agrees with the SEC that Wisdom's intentionally deceitful conduct and seemingly illegitimate operation warrants a significant penalty to deter it from committing these violations in the future. Accordingly, the Court awards the maximum statutory penalty for each violation alleged in the complaint as requested.[5]

*     *     *

The SEC's motion for entry of default judgment is granted and judgment is entered against Wisdom by (1) enjoining it from violating Section 204(a), Section 207, and filing a Form ADV as an Exempt Reporting Adviser and (2) ordering Wisdom to pay a civil penalty in the amount of $1,152,316. An order of final judgment consistent with this memorandum opinion will issue separately.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: August 3, 2026

---

[5] In doing so, the Court notes that other district courts faced with default judgment requests from the SEC in suits against purported ERAs with analogous factual allegations—regarding failures to respond to SEC requests for records and filing of false information in Form ADVs—appear to have also imposed the second-tier statutory maximum penalty for each violation. *See, e.g.*, Default Judgment, *SEC v. Bluesky Eagle Cap. Mgmt. Ltd.*, No. 25-cv-9507 (S.D.N.Y. Feb. 11, 2026), ECF 25 at 4; Default Judgment, *SEC v. Supreme Pwr. Cap. Mgmt. Ltd.*, 25-cv-9505 (S.D.N.Y. Apr. 20, 2026), ECF 17 at 4; Final Judgment by Default, *SEC v. AI Investment Educ. Found. Ltd.*, No. 25-cv-3650 (D. Colo. Apr. 20, 2026), ECF 16 at 4.